**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

TIMOTHY JOHNSON,            )
                            )   3:94-CV-0229-LRH (VPC)
            Plaintiff,      )
                            )
      vs.                   )   **REPORT AND RECOMMENDATION**
                            )   **OF U.S. MAGISTRATE JUDGE**
ROBERT MILLER, et al.,      )
                            )
            Defendants.     )   February 13, 2007
_____)

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is the motion for partial summary judgment (#143) filed by defendants Ron Angelone, Jay Barrett,[1] E.K. McDaniel, Becky Messick, Robert Miller, and Michael Scheel. Plaintiff opposed (#144) and defendants replied (#145). For the reasons set forth below, the court recommends that the defendants' motion for partial summary judgment (#143) be granted.

**I.    History and Procedural Background**

Plaintiff, Timothy H. Johnson, ("plaintiff") is a prisoner at Ely State Prison ("ESP"), in the custody of the Nevada Department of Corrections ("NDOC") (#6). In 1994, plaintiff filed a civil rights complaint (#6), which challenged NDOC's administration of inmate trust accounts. *Id.* This lawsuit has since been the subject of two appeals to the Ninth Circuit: *Vignolo v. Miller*, 120 F.3d 1075 (9th Cir. 1997) and in *Vance v. Barrett,* 345 F.3d 1083 (9th Cir. 2003). In *Vance,* the Ninth Circuit granted plaintiff's motion for summary judgment regarding his first claim for retaliation and

---

[1] Defendant Jay Barrett is deceased, and defendants filed a suggestion of death upon the record pursuant to Fed. R.Civ.P. 25(A)(1) (#119).

held that defendants had unconstitutionally retaliated against plaintiff by firing him from his prison job for refusing to waive his right to receive the accrued interest on money in his prison savings account. *Id.* at 1094. The Ninth Circuit also found that qualified immunity was not available to defendants. *Id.* The parties have stipulated that the only remaining issues in this action concern plaintiff's damages (#94).

Among the defendants named in plaintiff's complaint is former Governor Miller, and while in office, his duties included serving as chair of the Board of Prison Commissioners (#6; #109; and #143, Ex. A, defendant Robert Miller's responses to plaintiff's first set of requests for admissions, Nos. 1 and 2).[2] Defendant Ron Angelone ("defendant Angelone") served as NDOC director from June 1989 through April 1994 (#109; #143, Ex. B, defendant Angelone's response to plaintiff's first set of interrogatories, Ans. No. 2). Plaintiff names all defendants in both their official and individual capacities.

The parties admit the following facts, which will require no proof at trial (#94). Pursuant to Nev. Rev. Stat. § 209.241(1)(1) (1993),[3] NDOC regulates inmate trust accounts, and inmates must keep all money earned at prison jobs in a personal trust account. *Id.* Plaintiff held a prison job, and the money he earned was placed in an interest bearing trust account. *Id.* In 1994, NDOC instituted a policy which required inmates to sign over a portion of the accrued interest in their personal accounts to NDOC if they wanted to work in a prison job. *Id.* When plaintiff refused to sign the

---

[2] On May 1, 2006, plaintiff timely moved to amend his complaint to add Frankie Sue de Papa and Cheryl Lau, the former Attorney General and former Secretary of State, respectively, who also served on the Board of Prison Commissioners (#136). This court denied the motion on the ground that discovery had revealed that there was no factual basis upon which to add these two defendants #142).

[3] This statute has been amended several times since 1993, but the *Vance* court applied the version of the statute in place when the lawsuits were first filed. *Vance,* 345 F.3d 1083, 1086, n. 1.

2

1  form, he was fired from his prison job. *Id.*   Plaintiff lost wages in the amount of $154.36 plus

2  interest as a result, and he also lost work credits that would otherwise have accrued and been applied

3  against his sentence. *Id.*

4

5  The revised fiscal agreement at issue, form 533, was developed in 1994 pursuant to

6  institutional bulletin ("IB") 94-18 (#143, Ex. D).  When IB 94-18 was promulgated, defendant

7  Angelone, in his capacity as NDOC director, issued administrative directive 32-94, which required

8  all inmates to sign form 533, whether or not they were currently employed (#143, Ex. F).  Thereafter,

9  defendant Angelone issued administrative directive 91-94, which stated that no inmate would be

10 allowed to hold a prison job if he or she did not sign form 533 (#143, Ex. G).  In addition, IB 94-18

11

12 was revised to clarify that failure to sign form 533 would render an inmate ineligible for prison

13 employment (#143, Ex. H, ¶ V.A.).[4]

14

15 Pursuant to Administrative Regulation ("AR") 101, the Board of Prison Commissioners does

16 not approve institutional bulletins; rather the NDOC director is granted that authority (#143, Ex. I).

17 Similarly, the Board of Prison Commissioners does not review or approve administrative directives

18 issued by the NDOC director (#143, Ex. K).

19

20 Plaintiff alleges that as chair of the Board of Prison Commissioners, Governor Miller

21 approved the "memorandum" which required all inmates to sign form 533 or be fired from their

22 prison jobs, and he further alleges that in his capacity as chair of the Board of Prison Commissioners,

23 Governor Miller had a duty to review and approve form 533 before it was implemented (#6).  It is

24 based upon Governor Miller's position as chair of the Board of Prison Commissioners that plaintiff

25 seeks to hold him liable for defendant Angelone's implementation of form 533.

26

27 ───────────────────

28 [4]IB 94-18 remained in effect until 1996, when it was superseded by IB 96-2 (#143, Ex. J).

3

The court notes that plaintiff is proceeding *pro se.* "In civil rights cases where the plaintiff appears *pro se,* the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Loa Angeles Police. Dep't.,* 839 F.2d, 621, 623 (9th Cir. 1988); *see also Haines v. Kerner,* 404 U.S. 519, 520-21 (1972).

## II.     Discussion and Analysis

### A.     Summary Judgment Standard

Summary judgment allows courts to avoid unnecessary trials where no material factual disputes exist. *Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1471 (9th Cir. 1994). In deciding whether to grant summary judgment, the court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). In inmate cases, the courts must

> distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, __ U.S. __, 126 S.Ct. 2572, 2576 (2006). The court grants summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(C). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and submitting evidence which demonstrates the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317 , 323 (1986). Once the moving party has met its burden, the party

4

opposing the motion may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson*, 477 U.S. at 248.

### B.     Persons Amenable to Suit Under § 1983

State officials sued in their official capacities for damages are not persons for purposes of section 1983. *Arizonans for Official English Language v. Arizona,* 520 U.S. 43, 69 n. 24 (1997); *Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 71 (1989). State officials sued in their personal capacities for monetary damages are persons for purposes of Section 1983. *See Hafer v. Melo,* 502 U.S. 21, 31 (1991). Liability in a personal capacity suit can be demonstrated by showing that the official caused the alleged constitutional injury. *Kentucky v. Graham,* 473 U.S. 159, 166 (1985). Depending on the facts, a person sued in an individual capacity may be able to establish immunity from claims for damages. *See id.* at 166-67.

The law is clear that defendants cannot be sued in their official capacities for monetary damages. The sole form of relief plaintiff requests is damages for lost wages, lost net accrued interest, and punitive damages (#80). Because none of the defendants can be sued for monetary damages in their official capacities, all defendants are entitled to summary judgment on this issue.

### 1.     Requirement of Personal Participation and *Respondeat Superior*

"Liability under section 1983 arises only upon a showing of personal participation by the defendant. A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is not respondeat superior liability under section 1983." *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted); *see also, Mabe v. San Bernardino County,* 237 F.3d 1101, 1109 (9th Cir. 2001).

Because there is no *respondeat superior* liability under Section 1983, liability of a supervisor requires an affirmative act, or failure to act where there is an affirmative duty. *Harris v. Roderick,* 126 F.3d 1189, 1204 (9th Cir. 1997). For example, in *Harris* the court held that FBI supervisors were liable for the shooting of a defendant where the supervisors were alleged to have developed a plan that resulted in the shooting. *Id.* However, the court was careful to note that this was not a liability theory under *respondeat superior. Id.* Rather, the supervisors were directly liable because of their affirmative acts. *Id.* "A supervisor may be liable if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Redman v. County of San Diego,* 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) (citation omitted). "'The requisite causal connection can be established . . . by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'" *Id.* at 1447, *quoting Johnson v. Duffy,* 588 F.2d 740, 743-44 (9th Cir. 1978). The court noted that this is not a form of vicarious liability, but is direct liability. *Id.*

Plaintiff seeks to hold Governor Miller personally liable in this action based upon the allegations that in his capacity as Chair of the Board of Prison Commissioners, Governor Miller was required to review and approve form 533, and that Governor Miller, in fact, approved of the "memorandum" from which form 533 was derived (#6). Construing plaintiff's pleading liberally, the only evidence he offers in support of these allegation is his complaint (#6) and his affidavit offered in opposition to defendant's motion for summary judgment (#144, Ex. 1). Plaintiff's cites also Nev. Rev. Stat. § 209.111 for the proposition that promulgation and implementation of the revised fiscal agreement, form 533, is the responsibility of the Board of Prison Commissioners. *Id.*

Although Nev.Rev.Stat. § 209.111 charges the Board of Prison Commissioners to "[p]rescribe regulations for carrying on business of the board and the department," the Prison Board, like many statewide commissions overseeing state agencies and departments, delegates authority to department heads to issue institutional guidelines and procedures for the state agency. In the case of NDOC, AR 101 grants the NDOC director the authority to issue institutional bulletins prior to the board's formal approval (#143, Ex. I, ¶ V.A). Likewise, administrative directives are issued by NDOC's director without review or approval of the Board of Prison Commissioners. *See* AR106 at ¶ V.E., attached as Ex. K to #143. Further, Governor Miller denied that the Board of Prison Commissioners approves all NDOC administrative regulations, and he has no independent recollection of any communication between defendant Angelone and the board concerning the revised fiscal agreement (#143, Ex. A, Robert Miller's response to plaintiff's first set of requests for admissions, Nos. 4, 5, 8, 11, 14, and 15). Defendant Angelone also stated that because the fiscal agreement was promulgated pursuant to IB 94-18, the Board of Prison Commissioners did not approve the agreement. *Id.* at Ex. B, Ron Angelone's response to plaintiff's first set of interrogatories, No. 14. In addition, defendant Angelone attests that the board did not review and approve administrative directives. *Id.* The only person defendant Angelone recalls consulting with regard to the revised fiscal agreement, form 533, is a deputy attorney general. *Id.,* Ex. B, No. 3.

Plaintiff has offered no evidence, other than the allegations in the complaint and in his affidavit, that Governor Miller had any personal involvement in the constitutional deprivation or that there is a sufficient causal connection between Governor Miller's role as chair of the Prison Board and the constitutional violation. *See Redman v. County of San Diego,* 942 F.2d 1435, 1446 (9th Cir. 1991). Plaintiff provides no specific allegations that Governor Miller participated or had knowledge of the issuance of the revised fiscal agreement; therefore, plaintiff has failed to allege an essential

7

element of his case. *Celotex,* 477 U.S. at 323. Thus, the court recommends that Governor's Millers motion for partial summary judgment be granted.

### III.     Conclusion

Based upon the foregoing, and for good cause appearing, the court concludes that none of the defendants is amenable to suit for damages in their official capacities. Further, Governor Miller is not amenable to suit because plaintiffs has failed to show that Governor Miller participated in or had personal knowledge of the alleged civil rights violations of the remaining NDOC defendants. As such, the court recommends that defendants' motion for partial summary judgment (#143) be granted.

The parties are advised:

1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within ten days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.    This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

/ / /

/ / /

/ / /

## IV. Recommendation

**IT IS THEREFORE RECOMMENDED** that the District Court enter an order **GRANTING** defendants' motion for partial summary judgment (#143).

DATED: February 13, 2007.

*/s/ Valerie P. Cooke*
_____
**UNITED STATES MAGISTRATE JUDGE**